# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:09-CR-91-TS |
| | ) | |
| RICHARD L. SCHLATTER | ) | |

## OPINION AND ORDER

Before the Court is a Motion to Suppress [DE 16], filed on October 14, 2009. The Defendant, Richard L. Schlatter, asks the Court to exclude evidence that was seized from his vehicle after a traffic stop and prior to, at the time of, or subsequent to his arrest. He also requests that the Court suppress statements he made to the state trooper who initiated the traffic stop that resulted in the discovery of the contraband and his arrest. The Government maintains that the trooper was justified in searching the car as a protective sweep for weapons, under the automobile exception because he had probable cause to believe the car contained contraband, and as a valid search incident to custodial arrest. For the reasons stated in this Opinion and Order, the Defendant's Motion to Suppress is denied.

## BACKGROUND

On August 26, 2009, the Government filed an Indictment charging that the Defendant knowingly and intentionally possessed controlled substances, possessed a firearm in furtherance of, and carried a firearm during and in relation to, a drug trafficking crime, and was a felon in possession of a firearm. On October 14, the Defendant filed a Motion to Suppress evidence that was seized from his vehicle on June 20, 2009, on grounds that the seizure violated the Fourth Amendment. The Defendant also sought to exclude statements that he made in response to

inquiries before he was advised of his *Miranda* rights. The Defendant requested an evidentiary hearing. The Government, in its Response to Defendant's Motion to Suppress, submitted that the search of the Defendant's car was, at the very least, a protective search for weapons, and was also justified under the automobile exception when the trooper observed contraband in plain view. The Government argued that *Miranda* warnings were not required because the Defendant was not subject to a custodial interrogation. The Government agreed that an evidentiary hearing was necessary to resolve factual disputes raised by the Defendant's Motion and the Government's Response.

On December 7, the Court conducted an evidentiary hearing. The Defendant was present in the courtroom with his attorney, Michelle Kraus. The Government was represented by AUSA Anthony Gellar. The Court heard testimony from Indiana State Police Trooper Caleb Anderson, the trooper who stopped the Defendant's vehicle on June 20, 2009.

## STATEMENT OF FACTS

Trooper Anderson was the only witness to testify at the evidentiary hearing. The Defendant did not produce any witnesses or introduce any evidence to contradict the testimony of Trooper Anderson. He was forthright and straightforward in his testimony, and it was internally consistent. Nothing was elicited during cross-examination to cast doubt on his veracity, accuracy, or credibility. The Court credits Trooper Anderson's testimony about the events of June 20, and finds the following facts to be pertinent and true.

Trooper Anderson drives a fully marked police car during his duty on the mid-night shift in Allen County, Indiana. On June 20, a little after 1:30 AM, Trooper Anderson observed a car

that he believed was being driven above the posted speed limit of 30 miles per hour. He would later learn that the driver was the Defendant, Richard Schlatter. Trooper Anderson used his radar unit to clock the car going 41 miles per hour. Trooper Anderson turned on his emergency lights and began to follow the Defendant. When the Defendant did not immediately stop, Trooper Anderson turned on his spotlight and was able to see the sole occupant of the vehicle moving around, reaching toward the middle console and passenger areas of the car, "like he was hiding something." (Suppression Hr'g Tr. 16, DE 25.) Trooper Anderson then activated his siren. The Defendant continued driving, even maneuvering at one point to appear as if he was going one direction but then quickly taking another road. This road was not well lit and a large cemetery was nearby. Trooper Anderson testified that he believed the Defendant might try to get out of the car and "take off running." (Suppression Hr'g Tr. 18–19.) Trooper Anderson continued to follow the vehicle, which stopped after Trooper Anderson angled his squad car so that he would have blocked the Defendant's continued progress if he had tried to keep going. During the suppression hearing, Trooper Anderson estimated that he followed the Defendant the equivalent of four to six city blocks after he activated his lights before the Defendant stopped his car.[1]

Trooper Anderson approached the car with caution, believing that the movements he observed the Defendant making toward the passenger area of the car could have been for the purpose of hiding or retrieving a weapon. Trooper Anderson approached the car and directed the Defendant to exit. The Defendant exited with his hands up, and Trooper Anderson reholstered the gun that he had been holding out of sight behind his thigh. Trooper Anderson asked the

---

[1] Trooper Anderson was not confident on the actual distance. He candidly admitted that the total amount of time that passed before the Defendant pulled over was "probably 30 seconds." (Suppression Hr'g Tr. 48.)

Defendant what he was hiding and why he did not stop. The Defendant responded that he was not hiding anything. Trooper Anderson told the Defendant that he could see him reaching around in the passenger area the entire time, and that he was going to pat him down for weapons for officer safety before allowing him to go back to his vehicle for the remainder of the traffic stop. Trooper Anderson's pat down of the Defendant's outer clothing did not reveal any weapons or other contraband. Trooper Anderson then told the Defendant that he was going to search inside his vehicle as well, specifically in the area within the Defendant's reach before allowing the Defendant to return to the car. The Defendant told Trooper Anderson that he had mushrooms in the car. Trooper Anderson then asked him whether there was anything else in the car, "anything I'm going to get poked on, sticked on, you know, sometimes we run across needles and I definitely don't want to get some type of disease from a needle stick." (Suppression Hr'g Tr. 28.) The Defendant said there were no weapons, but that he had some Vicodin pills and also admitted that he did not have a prescription. Trooper Anderson testified that he decided at that point to put the Defendant in handcuffs because two D felonies were implicated. As he was doing so, Sergeant James Gephart arrived at the scene and stayed with the Defendant while Trooper Anderson approached the driver side door of the Defendant's car, which had remained open after the Defendant exited the car. He saw a bag of pills on the seat and a bag containing powder in a side compartment in the driver's door. As Trooper Anderson continued his search of the car, he found a loaded handgun and a pill bottle in the center console, and a plastic baggie between the passenger seat and center console. He removed four baggies containing what appeared to be marijuana and illegal mushrooms.

      Trooper Anderson returned to the Defendant and read him his *Miranda* rights. The

Defendant "didn't say he wanted an attorney at this point." (Suppression Hr'g Tr. 35.) After answering some questions about the contraband recovered from the car, the Defendant requested a lawyer. Trooper Anderson ceased questioning, performed a field test on the powdery substance in the door, and ran a driver's license check. The field test was negative, but Trooper Anderson discovered that the Defendant's driver's licence was suspended. Because the Defendant could not lawfully drive the car and because he was under arrest, Trooper Anderson conducted an inventory search of the car in preparation for it to be towed and impounded.

## DISCUSSION

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating that the Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles"). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. Any ulterior motive an officer may have for making the stop is irrelevant. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813).

The Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S.

106, 110 (1977); *see also Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (noting that "roadside encounters between police and suspects are especially hazardous"); *Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (noting the same risk applies "whether the occupant of the stopped car is a driver or passenger"); *United States v. Denney*, 771 F.2d 318, 321 (7th Cir. 1985) ("[Investigative detentions involving suspects in vehicles at the roadsides are especially dangerous to the police officers."). Because of these dangers, an officer may order a vehicle's occupants out of the car during a routine traffic stop. *Wilson*, 519 U.S. at 410; *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005). Alternatively, if the officer has a reasonable suspicion that the driver or passenger is armed or may be able to gain immediate control of a weapon, he may conduct a protective search of the passenger compartment for accessible weapons. *Long*, 463 U.S. at 1049–50; *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004). In doing so, the officer must have "specific, articulable facts which, in combination with inferences to be drawn from those facts, reasonably warrant the intrusion." *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992); *Long*, 463 U.S. at 1049. In assessing the reasonableness of any search, the court must balance the degree of the intrusion against the government's justification for the search. *See United States v. Knights*, 534 U.S. 112, 118–19 (2001). Under the plain view doctrine, an officer may seize evidence without a warrant if he has a legal right to be in the place from where he sees the object and a lawful right of access to the object and if its incrimination nature is immediately apparent. *Long*, 463 U.S. at 1050.

Under the "automobile exception" to the warrant requirement, a car may be searched without a warrant if there is probable cause to believe that the car contains contraband or evidence. *Carroll v. United States*, 267 U.S. 132, 149 & 153–56 (1925); *United States v. Hines*,

449 F.3d 808, 814 (7th Cir. 2006). Probable cause exists if, given the totality of the circumstances, there is a "fair probability" that the car contains contraband or evidence. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Once police discover contraband in a car, they have probable cause to believe that the car may contain additional contraband and may "search every part of the vehicle and its contents that could conceal additional contraband, including the area beneath the passenger seat and the trunk." *Id.*

Finally, it is legal to search a vehicle incident to a lawful custodial arrest, including the contents of any closed containers found inside, in order to disarm the suspect or preserve evidence of a crime. *See New York v. Belton*, 453 U.S. 454, 460 (1981); *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003). It is not permissible to conduct a *Belton* search pursuant to a traffic citation alone. *Knowles v. Iowa*, 525 U.S. 113 (1998) (underscoring that a *Belton* search may not be conducted as part of a mere traffic stop, even if there is probable cause for the traffic stop, or probable cause to arrest the driver for the traffic violation). In addition, the search is authorized only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search, and when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. *Arizona v. Gant*, 129 S. Ct. 1710, 1719–20 (2009).

Turning to the facts of this case, the Defendant does not dispute that Trooper Anderson had probable cause to stop him. Speeding is an infraction in Indiana. *See* Indiana Code §§ 9-21-5-2 and 13. Neither does the Defendant dispute that Trooper Anderson had the legal authority to order the Defendant to exit his car. The Defendant takes issue with Trooper Anderson's statement to the Defendant that he was going to search his vehicle for officer safety. The

7

Defendant maintains that the search that Trooper Anderson indicated he was going to make was unconstitutional because nothing of evidentiary value related to the speeding infraction could have been discovered inside the car, and Trooper Anderson could not reasonably have believed that the Defendant could reach any weapon inside the car.

It is undisputed that before Trooper Anderson looked inside the Defendant's car, the Defendant stated that mushrooms and Vicodin pills for which he did not have a prescription were inside the car. These statements provided probable cause to believe that the car contained contraband, and justified searching the car pursuant to the automobile exception to the warrant requirement. Because this exception to the warrant requirement remains unchanged by the Supreme Court's decision in *Gant*, the legality of the search need not rest on the "search incident to arrest"—the exception under which the Defendant bases his arguments in favor of suppression. *See United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010) (noting that the automobile exception, "recalled in *Gant*, remained unchanged" and that the search at issue was lawful because probable cause existed to believe the truck contained evidence of a crime). Therefore, the Defendant's challenge to the legality of the search can only succeed if he first establishes that Trooper Anderson had no legal right to rely on or consider the Defendant's statement that he had controlled substances in the vehicle, as these were the statements that provided the probable cause to search the Defendant's vehicle. To this end, the Defendant attempts to establish that the statements were obtained in violation of the Defendant's *Miranda* rights, or were otherwise coerced by Trooper Anderson's "improper threat" that he would be searching the Defendant's car for officer safety.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth

Amendment requires that, before police officers interrogate a suspect in custody, they must warn the suspect of his right to remain silent and his right to an attorney. This *Miranda* warning is not required in all interactions between suspects and officers, only when the suspect is "in custody" and subject to "interrogation." *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996) (citing *United States v. Burns*, 37 F.3d 276, 280 (7th Cir. 1994)). The Supreme Court has determined that a person who is temporarily detained pursuant to an ordinary traffic stop is not in custody for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984). In *Berkemer*, the court cautioned that "[f]idelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered that decision are implicated." *Id.* at 437. The Court stated that, because of the "comparatively nonthreatening character" of the ordinary traffic stop, a detained motorist need not receive *Miranda* warnings before police may ask him a moderate number of questions. *Id.* at 437–40 (citing the brevity of the detention, the fact that it usually takes place in public view, and involves the participation of only one or two police officers as factors that make it unlikely that a person detained for a traffic stop will be coerced into speaking). If the motorist is later subjected to treatment that renders him in custody for practical purposes, he is then entitled to the full panoply of protections prescribed by *Miranda*. *Id.* at 440. For *Miranda* to apply to a traffic stop, a defendant must be subject to a "restraint on his freedom of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

Although the Defendant made furtive movements that heightened Trooper Anderson's safety concerns, the Defendant's detention was pursuant to a traffic stop for speeding. To account for the safety concerns, Trooper Anderson commanded the Defendant to exit his car and

9

conducted a pat down, which he explained was for his safety. Trooper Anderson then immediately asked the Defendant what he was hiding and why he did not stop. Trooper Anderson did not tell the Defendant that he was under arrest or that his detention would not be temporary, did not place the Defendant in handcuffs, and did not display his gun to the Defendant or otherwise act in a threatening manner. The stop took place on a public street. When the Defendant responded that he wasn't hiding anything, Trooper Anderson told the Defendant that he saw him moving around in the car and reaching over to the passenger side, and was going to search his car for officer safety before he would put him back in the car to finish up the traffic stop. It was after this brief exchange that the Defendant admitted to having illegal substances in the car, specifically mushrooms. When Trooper Anderson asked whether there was anything else in the car, specifically something that could poke him, the Defendant told him there was Vicodin in the car. Before making these admissions, the Defendant's freedom of movement was not curtailed to the degree associated with formal arrest, and there was little risk of compulsory self-incrimination. A reasonable person in the Defendant's position would not have considered the brief questioning at the scene of a traffic stop to be a custodial interrogation. The concerns that first powered the decision in *Miranda* were not implicated here, and the Defendant was not in custody for purposes of *Miranda*. Accordingly, there is no basis to suppress his statements.

  The Defendant argues that "[t]he search of the vehicle, for officer safety reasons, that Trooper Anderson threatened Schlatter with was unconstitutional under the Fourth Amendment and more specifically under *Arizona v. Gant*." (Brief 4, DE 26.) Under the circumstances of this case, the Court does not find anything unconstitutional in the challenged action. *Gant*, as mentioned earlier, addressed the search incident to arrest exception as it applied to vehicles,

which is distinct from the exception that permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." *Long*, 463 U.S. at 1049 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). *Gant* specifically recognized this exception without purporting to invalidate or alter it. 129 S. Ct. at 1721. Therefore, if Trooper Anderson had a reasonable suspicion, based on specific, articulable facts and the reasonable inferences from those facts, that the Defendant may have had access to a gun in his car, he would have been justified in searching the area within the Defendant's immediate reach without obtaining a warrant.

To initiate the stop, Trooper Anderson turned on his emergency lights. When the Defendant did not immediately stop, he turned on his spot light and saw the Defendant reaching over to the middle console and passenger area of the car. Trooper Anderson reasonably construed this as an act of placing or retrieving something, possibly a weapon. *See United States v. Arnold*, 388 F.3d 237, 240 (7th Cir. 2004) (holding that officer had reasonable suspicion that motorist who made unusual movements into the back seat may have retrieved or concealed a weapon); *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992) (stating that officer's observation of furtive movements between the drive and the passenger of a car that he was trying to pull over reasonably warranted searching the interior of the car). The length of time the Defendant took to stop reasonably increased the suspicion that he was hiding or retrieving something that he did not want Trooper Anderson to know about. Consistent with his belief, Trooper Anderson patted the Defendant down and told him he would be looking inside the car in the areas within the Defendant's reach before allowing him to return to the car for the remainder

11

of the stop. The Defendant argues that when the search was actually conducted, he was already handcuffed and outnumbered by two police officers. However, at the time that Trooper Anderson made the statement that he would be searching the car, it was not clear that the stop would involve more than a citation for speeding, or that Trooper Anderson would not be able to return the Defendant to his car. In *Arnold*, the defendant argued that an officer who observed unusual movement was not justified in conducting a search of the car for his safety because the officer had no intention of allowing the defendant to reenter the vehicle with only a learner's permit. 388 F.3d at 241. The Seventh Circuit rejected this argument, reasoning that

> Arnold fails to acknowledge, however, that Officer Ford may have permitted him to gather items from the car before leaving the scene even if the officer would not have permitted him to drive the vehicle. This argument also overlooks the possibility that Arnold, who sat unhandcuffed in the back of the patrol car, could have broken away from Officer Ford's control. *See Long*, 463 U.S. at 1051, 103 S.Ct. 3469; [*United States v.*] *Holifield*, 956 F.2d [665,] 669 [(7th Cir. 1992)].

*Id.* Similarly, when Trooper Anderson stated that he saw the Defendant moving around in the car and would be looking inside of it, even if Trooper Anderson did not intend to return the Defendant to his car, the Defendant could still have broken away from him and retrieved a weapon from inside the open vehicle. Moreover, Trooper Anderson did not suggest that his search would extend beyond "those areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049. In any event, all of this became moot when the Defendant admitted to having mushrooms and Vicodin in the car, and that he did not have a prescription for the Vicodin. The search then became one that was justified under the automobile exception.

Mushrooms containing psilocybin are hallucinogenic.[2] In Indiana, this hallucinogenic

---

[2] According to the National Drug Intelligence Center, the most common names for Psilocyn are magic mushrooms, mushrooms, and shrooms. http://www. justice.gov/ndic, last visited on Apr. 14, 2010.

substance is identified by statute as a schedule I controlled substance. Ind. Code § 35-48-2-4(d)(29). Vicodin, because it contains hydrocodone, is also a controlled substance. Ind. Code § 35-48-2-6. Possessing a controlled substance without a valid prescription is a Class D felony. Ind. Code § 35-48-4-7 (providing that "a person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses a controlled substance (pure or adulterated) classified in schedule I, II, III, or IV, except marijuana or hashish, commits possession of a controlled substance, a Class D felony"). Given the Defendant's admission, there was at least a "fair probability" that his car contained contraband, specifically mushrooms and Vicodin. *See Gates*, 462 U.S. at 238. One of the items that Trooper Anderson immediately observed when he approached the car was a bag of pills on the seat. Once Trooper Anderson discovered contraband in the car, he had probable cause to believe that the car contained additional contraband and could "search every part of the vehicle and its contents that could conceal additional contraband, including the area beneath the passenger seat and the trunk." *Id.*; *see also United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) (holding that once trooper discovered that the motorist was transporting open, alcoholic liquor he had probable cause to believe that the car contained additional contraband or evidence).

Trooper Anderson did not violate the Defendant's Fifth Amendment rights when he asked him what he was hiding and whether their was anything in the car that could harm him, or when he indicated that he would be searching inside his car in the areas within his reach before he allowed him to return to the car. Trooper Anderson's search of the car was justified at its inception and throughout under the automobile exception. After discovering contraband, Trooper Anderson advised the Defendant of his *Miranda* rights. There is no basis upon which to suppress

13

the statements the Defendant made to Trooper Anderson, or to suppress the contraband found in his car, and his Motion will be denied.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress [DE 16] is DENIED. A Telephonic Final Pretrial Conference is set for Thursday, April 29, 2010, at 2:00 PM. The Court will initiate the call. A Trial is scheduled to begin on Tuesday, May 11, 2010, at 8:30 AM before Judge Theresa L. Springmann.

SO ORDERED on April 19, 2010.

<u>s/ Theresa L. Springmann</u>
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT